## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **LISA RAYE HEFNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 5:25-cv-172-AMM** |
| | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| **Commissioner,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF DECISION

Plaintiff Lisa Raye Hefner brings this action pursuant to the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for a period of disability and disability insurance benefits ("benefits"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record, the court **AFFIRMS** the decision of the Commissioner.

## I.    Introduction

On August 11, 2021, Ms. Hefner filed an application for benefits under Title II of the Act, alleging disability beginning July 29, 2021. R. 11, 203–14. Ms. Hefner alleges disability due to: major depressive disorder; hypertension; generalized anxiety disorder; and multiple sclerosis. R. 203.

1

The Social Security Administration ("SSA") initially denied Ms. Hefner's application on March 2, 2022, and again upon reconsideration on January 5, 2024. R. 11, 203–37. On January 22, 2024, Ms. Hefner filed a request for a hearing before an Administrative Law Judge ("ALJ"). R. 11, 285–87. That request was granted. R. 310–12, 338–42. Ms. Hefner received a telephone hearing before ALJ Patrick R. Digby on July 2, 2024. R. 11, 175–202. On July 26, 2024, ALJ Digby issued a decision, finding that Ms. Hefner was not disabled from July 29, 2021, through the date of the decision. R. 8–25.

Ms. Hefner appealed to the Appeals Council, which denied her request for review on December 16, 2024. R. 1–4. After the Appeals Council denied Ms. Hefner's request for review, R. 1–4, the ALJ's decision became the final decision of the Commissioner and subject to district court review. On February 3, 2025, Ms. Hefner sought this court's review of the ALJ's decision. *See* Doc. 1.

## II.    The ALJ's Decision

The Act establishes a five-step test for the ALJ to determine disability. 20 C.F.R. § 404.1520. *First*, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done "for pay or profit." 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in

substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). *Second*, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c). Absent such impairment, the claimant may not claim disability. 20 C.F.R. § 404.1520(a)(4)(ii), (c). *Third*, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 404.1525, 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity, which refers to the claimant's ability to work despite her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545. In the *fourth* step, the ALJ determines whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ determines that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the *fifth* and final step. 20 C.F.R. §

404.1520(a)(4)(v). In this step, the ALJ must determine whether the claimant is able to perform any other work commensurate with her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g)(1). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 404.1560(c).

The ALJ determined that Ms. Hefner would meet the insured status requirements of the Act through March 31, 2027. R. 12, 13. Next, the ALJ found that Ms. Hefner "has not engaged in substantial gainful activity since July 29, 2021, the alleged onset date." R. 13 (emphasis omitted). The ALJ decided that Ms. Hefner had the following severe impairments: degenerative disc disease/osteoarthritis of the cervical and lumbar spine and multiple sclerosis. R. 14. The ALJ found that Ms. Hefner had these "non-severe" impairments: mild depressive disorder with anxious distress and substance use disorders. R. 14. Overall, the ALJ determined that Ms. Hefner "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" to support a finding of disability. R. 16 (emphasis omitted).

The ALJ found that Ms. Hefner's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with

the medical evidence and other evidence in the record." R. 19. The ALJ found that Ms. Hefner "has the residual functional capacity to": occasionally lift and/or carry, including upward pulling, of fifty pounds; frequently lift and/or carry, including upward pulling, of twenty-five pounds; sit for six hours in an eight-hour workday with normal breaks; stand and/or walk for six hours in an eight-hour workday with normal breaks; push and/or pull, including operation of hand and foot controls, up to the lift and carry restrictions; frequently climb ramps and stairs; frequently stoop, kneel, crouch, and balance. R. 17–18 (emphasis omitted). The ALJ determined that Ms. Hefner cannot: work on ladders, ropes, or scaffolds; work at unprotected heights; work around dangerous machinery; work with vibrations, including the use of vibration tools such as power tools and air compression tools; or frequently be exposed to extreme cold, heat, wetness, and humidity. R. 18.

The ALJ determined that Ms. Hefner's past relevant work was that of a mail supervisor. R. 24–25. The ALJ determined Ms. Hefner is "capable of performing past relevant work." R. 24 (emphasis omitted).

Based on these findings, the ALJ concluded that Ms. Hefner was not under a disability as defined in the Act, from July 29, 2021, through July 26, 2024, the date of the decision. R. 25. Ms. Hefner now challenges that decision.

## III.   Standard of Review

This court's role in reviewing claims brought under the Act is a narrow one. The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Walker v. Soc. Sec. Admin, Comm'r*, 987 F.3d 1333, 1338 (11th Cir. 2021); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Act mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *see* 42 U.S.C. § 405(g). This court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the record as a whole and determine if the decision "is reasonable and supported by substantial evidence." *See Martin*, 894 F.2d at 1529 (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quoting *Bloodsworth*, 703 F.2d at 1239). If the Commissioner's factual findings are supported by substantial evidence, they must be affirmed even if the preponderance of the evidence is against the Commissioner's findings. *Id*. No decision is automatic, for "[d]espite th[e] deferential standard [for review of claims], it is imperative that th[is] Court

scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## IV.    Discussion

Ms. Hefner raises two arguments on appeal. *First*, Ms. Hefner argues that "the ALJ failed to properly evaluate the opinion of the State Agency Psychiatric Consultants." Doc. 14 at 1 (emphasis omitted). *Second*, Ms. Hefner argues that the ALJ's residual functional capacity "determination is unsupported by substantial evidence due to his failure to develop the record, as well as his omission of dispositive evidence from review." *Id.* (emphasis omitted).

### A. The ALJ's Evaluation of Ms. Hefner's Medical Opinion Evidence

The SSA has revised the applicable regulations related to medical opinion evidence. The SSA's new regulations, promulgated in 2017, do away with the hierarchy of medical opinions and the treating source rule. 20 C.F.R. § 404.1520c(a). Under the new regulations, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" for all claims filed on or after March 27, 2017. *Id*. And the ALJ "will articulate in [his] determination

or decision how persuasive [he] find[s] all of the medical opinions . . . in [the claimant's] case record." *Id.* § 404.1520c(b).

When evaluating the persuasiveness of the opinions, the ALJ considers these factors: (1) supportability, i.e., how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)"; (2) consistency with the evidence; (3) relationship with the claimant, including the nature of the relationship, the length of the treatment relationship, the frequency of examinations, and the purpose and extent of the treatment relationship; (4) specialization; and (5) "[o]ther factors," such as the medical source's familiarity with the agency's policies and the evidence in the claim. *Id.* § 404.1520c(c). Supportability and consistency are the most important of the five factors. *Id.* § 404.1520c(b)(2). Supportability measures how a medical source presents "objective medical evidence and supporting explanations" "to support his or her medical opinion(s)." *Id.* § 404.1520c(c)(1). Consistency measures how a medical opinion compares to "evidence from other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2). An ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions . . . in [his] . . . decision." *Id.* § 404.1520c(b)(2). The ALJ may explain how he considered the remaining factors, but he is not required to do so. *Id.*

"Although an administrative law judge must consider supportability and consistency, he need not recite 'magic words to state with particularity the weight given to medical opinions or the reasons for discounting them.'" *Dubose v. Comm'r of Soc. Sec.*, No. 24-13554, 2025 WL 2529598, at *5 (11th Cir. Sept. 3, 2025) (quoting *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1276 n.14 (11th Cir. 2024)). "What matters is whether the judge states with at least some measure of clarity the grounds for his . . . decision." *Id.* (internal quotation marks omitted); *see also Davis v. Comm'r of Soc. Sec.*, No. 24-10771, 2025 WL 1123853, at *5 (11th Cir. Apr. 16, 2025) (affirming ALJ's determination when ALJ was not "explicit with [his] use of the relevant terms" but his "analysis clearly articulated a consideration of both supportability and consistency"); *Minnis v. Comm'r of Soc. Sec.*, No. 24-11281, 2025 WL 974570, at *6 (11th Cir. Apr. 1, 2025) ("Although [he] did not use the words 'supportability' or 'consistency' to describe [his] findings, the ALJ was not required to.").

Ms. Hefner argues that the ALJ "failed to properly evaluate the opinion of Peter M. Sims, M.D, in accordance with the regulations and case law." Doc. 14 at 12; *see also* R. 212–13. Ms. Hefner also argues that the ALJ also improperly rejected the opinion of Brian McIntyre, Ph.D. Doc. 14 at 13; *see also* R. 234–35. Specifically, Ms. Hefner argues that "the ALJ does not appear to properly evaluate either the supportability or consistency factors in the written decision." Doc. 14 at 16.

### 1. Dr. Peter M. Sims

Dr. Sims performed the initial psychiatric evaluation of Ms. Hefner's claim for benefits. R. 212–13. Dr. Sims stated that Ms. Hefner does not have understanding or memory limitations. R. 212. Dr. Sims stated: "There is NO OBJECTIVE MEDICAL EVIDENCE that the claimant has any impairment of UNDERSTANDING / LEARNING information . . . or ANY impairment of RECALLING information . . . or ANY impairment of language." R. 212. Dr. Sims stated that Ms. Hefner does not have sustained concentration or persistence limitations. R. 212. Dr. Sims stated:

> The claimant has NO IMPAIRMENT IN MAINTAINING ATTENTION AND CONCENTRATION or in the COMPLETION OF TASKS[.] The claimant can maintain attention/concentration in performing all work-related tasks for two-hour periods in an eight-hour workday, utilizing all customary rest periods. The claimant will attend work in a reliable manner[.]

R. 212. Dr. Sims stated that Ms. Hefner has "social interaction limitations." R. 212. Dr. Sims opined that Ms. Hefner has no evidence of limitation with: "[t]he ability to ask simple questions or request assistance"; and "[t]he ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." R. 213. Dr. Sims opined that Ms. Hefner is not significantly limited in: "[t]he ability to interact appropriately with the general public"; "[t]he ability to accept instructions and respond appropriately to criticism from supervisors"; and "[t]he ability to get

along with coworkers or peers without distracting them or exhibiting behavioral extremes." R. 213. Dr. Sims explained:

> The claimant has NO IMPAIRMENT IN MAINTAINING ATTENTION AND CONCENTRATION or in the COMPLETION OF TASKS[.] The claimant can maintain attention/concentration in performing all work-related tasks for two-hour periods in an eight-hour workday, utilizing all customary rest periods. The claimant will attend work in a reliable manner[.]

R. 213. Dr. Sims found that Ms. Hefner has adaptation limitations. R. 213. He found that Ms. Hefner has no evidence of limitation in: "[t]he ability to be aware of normal hazards and take appropriate precautions"; and "[t]he ability to travel in unfamiliar places or use public transportation." R. 213. He found that Ms. Hefner is moderately limited in: "[t]he ability to respond appropriately to changes in the work setting"; and "[t]he ability to set realistic goals or make plans independently of others." R. 213. Dr. Sims wrote:

> The claimant does NOT have marked and severe impairment in the area of adapting to typical changes and challenges in the work environment. The claimant can exercise appropriate self-control in response to normal, expectable changes and other stressors. Changes should be introduced with adequate preparation and instruction. The claimant can make basic decisions related to work. The claimant can maintain appropriate safety awareness in the work environment. The claimant can arrange for transportation to and from work.

R. 213.

The ALJ considered and discussed Dr. Sims's medical opinion in his residual functional capacity findings:

> The opinions of the State agency psychiatrist in March 2022 finding no limitation of understanding and memory functions, of sustained concentration and persistence, or of social interactions is consistent with the evidence of record overall and persuasive. However, the undersigned takes exception to the moderate limitation of ability to respond appropriately to changes in the work setting and to set goals or make plans independently of others. Dr. Sims did not have the opportunity to review and consider the substantial amount of new medical evidence for the next 1-2 years that includes routinely normal mental status exams and denial of symptoms by the claimant. The undersigned finds the longitudinal evidence is consistent with no limitations in this area of functioning.

R. 23 (citations omitted).

Ms. Hefner argues that "the ALJ failed to fairly consider the required factors" when he did "not appear to properly evaluate either the supportability or consistency factors in the written decision." Doc. 14 at 15–16. Specifically, Ms. Hefner criticizes the ALJ reference to "new medical evidence" without providing "specific citation to any records that contradict Dr. Sims' opinions." *Id.* at 16. Instead, Ms. Hefner argues that the medical record indicates she "continue[d] to report ongoing confusion, brain fog, short-term memory loss, and fatigue." *Id.* (citing R. 969).

The Commissioner argues that "the ALJ's decision reflects clear consideration of the persuasiveness of the state agency consultants' findings." Doc. 15 at 10. The Commissioner argues that the ALJ's reasoning that Dr. Sims "did not

have the opportunity to review the updated evidence of record . . . speaks directly to the supportability of Dr. Sims' findings." *Id.* at 11. And, "[t]he ALJ's statement that Dr. Sims' opinion was inconsistent with updated medical records speaks directly to the consistency factor." *Id.* The Commissioner points to the ALJ's "references [to] the June and October treatment records, where [Ms. Hefner] denied any difficulty concentrating, remembering, or making decisions and was found with normal mood, effect, and intact memory functions on exam." *Id.* at 12 (citing R. 15, 830–31, 952–53).

### 2.  Dr. Brian McIntyre

At reconsideration, Dr. McIntyre performed the psychiatric evaluation of Ms. Hefner's claim for benefits. R. 234–35. Dr. McIntyre stated that Ms. Hefner does not have understanding or memory limitations. R. 234. Dr. McIntyre stated: "There is NO OBJECTIVE MEDICAL EVIDENCE that the claimant has any impairment of UNDERSTANDING / LEARNING information . . . or ANY impairment of RECALLING information . . . or ANY impairment of language." R. 234. Dr. McIntyre stated that Ms. Hefner does not have sustained concentration or persistence limitations. R. 234. Dr. McIntyre stated:

> The claimant has NO IMPAIRMENT IN MAINTAINING ATTENTION AND CONCENTRATION or in the COMPLETION OF TASKS[.] The claimant can maintain attention/concentration in performing all work-related tasks for two-hour periods in an eight-hour workday,

13

> utilizing all customary rest periods. The claimant will
> attend work in a reliable manner[.]

R. 234. Dr. McIntyre stated that Ms. Hefner has "social interaction limitations." R.

234. Dr. McIntyre opined that Ms. Hefner has no evidence of limitation with "[t]he

ability to maintain socially appropriate behavior and to adhere to basic standards of

neatness and cleanliness." R. 234. Dr. McIntyre opined that Ms. Hefner is not

significantly limited in: "[t]he ability to interact appropriately with the general

public"; "[t]he ability to accept instructions and respond appropriately to criticism

from supervisors"; and "[t]he ability to get along with coworkers or peers without

distracting them or exhibiting behavioral extremes." R. 234. Dr. McIntyre opined

that Ms. Hefner is moderately limited in "[t]he ability to ask simple questions or

request assistance." R. 234. Dr. McIntyre explained:

> The claimant has NO IMPAIRMENT IN MAINTAINING
> ATTENTION AND CONCENTRATION or in the
> COMPLETION OF TASKS[.] The claimant can maintain
> attention/concentration in performing all work-related
> tasks for two-hour periods in an eight-hour workday,
> utilizing all customary rest periods. The claimant will
> attend work in a reliable manner[.]

R. 234.

Dr. McIntyre found that Ms. Hefner has adaptation limitations. R. 234. He

found that Ms. Hefner has no evidence of limitation in: "[t]he ability to be aware of

normal hazards and take appropriate precautions"; and "[t]he ability to travel in

unfamiliar places or use public transportation." R. 235. He found that Ms. Hefner is

moderately limited in: "[t]he ability to respond appropriately to changes in the work setting"; and "[t]he ability to set realistic goals or make plans independently of others." R. 235. Dr. McIntyre wrote:

> The claimant does NOT have marked and severe impairment in the area of adapting to typical changes and challenges in the work environment. The claimant can exercise appropriate self-control in response to normal, expectable changes and other stressors. Changes should be introduced with adequate preparation and instruction. The claimant can make basic decisions related to work. The claimant can maintain appropriate safety awareness in the work environment. The claimant can arrange for transportation to and from work.

R. 235.

Dr. McIntyre provided "Additional Explanation":

> C. Clmt has the ability to interact with the general public, but may struggle to accept instructions and respond appropriately to criticism from supervisors.
> D. Clmt is able to be aware of normal hazards, but may have difficulties in responding appropriately to changes in the work setting.
>
> The claimant's mental health functioning impairs to some degree, and impairment is more than not severe. However, clmt is capable of performing certain ADL's. Evidence is considered persuasive due to severity listed in documented MER. Supportability and Consistency Statement: The clmt is currently consistent in terms of symptoms reported, with this supported by documented MER. Clmt appears capable of SRT's.

R. 235.

The ALJ considered and discussed Dr. McIntyre's medical opinion in his residual functional capacity findings:

> The opinions of the State agency psychologist in October 2023 finding none . . . or no significant limitation in the areas of understanding and memory functions and of sustained concentration and persistence are consistent with the longitudinal evidence and persuasive. However, the undersigned takes exception to his finding moderate limitations of ability to ask simple questions or request assistance, of ability to respond appropriately to changes in the work setting, and set goals or make plans independently of others. Dr. McIntyre indicates relying on the claimant being "consistent in terms of symptoms reported", although he does not include specific symptoms he references. Such limitations are not grounded in the medical evidence which includes routinely normal mental status objectively when seen for care and the repeated denial of symptoms by the claimant. The evidence of record and recent hearing testimony includes the claimant lives alone and is independent with daily activities and managing her household and finances. The medical evidence includes the claimant denying having any difficulties making decisions and she is assessed having good judgment.

R. 23 (citations omitted).

Ms. Hefner argues that "the ALJ failed to fairly consider the required factors" and did "not appear to properly evaluate either the supportability or consistency factors in the written decision." Doc. 14 at 15–16. Specifically, Ms. Hefner argues that "[t]he ALJ offers no articulation specifically related to his evaluation of the supportability of Dr. McIntyre's opinion." *Id.* at 17. And she argues that the ALJ "relies only on a broad conclusion" in his "flawed and inadequate" consistency

analysis. *Id.* Ms. Hefner also takes issue with the ALJ's reliance on her "daily activities as a means for discrediting the medical opinions." *Id.* at 20.

The Commissioner argues that "the ALJ's decision reflects clear consideration of the persuasiveness of the state agency consultants' findings." Doc. 15 at 10. The Commissioner argues that the ALJ noted which findings "were consistent with the longitudinal evidence and 'persuasive'." *Id.* at 12–13 (citing R. 23). The Commissioner argues that the ALJ's statement that Dr. McIntyre did not include the specific symptoms he references "speaks directly to the supportability of Dr. McIntyre's opinions." *Id.* at 13.

With respect to both medical opinions at issue, as an initial matter, the ALJ "considered the medical opinion(s) . . . in accordance with the requirements of 20 CFR 404.1520c." R. 18. Additionally, he stated that he "fully considered the medical opinions and prior administrative medical findings." R. 22. The ALJ articulated how persuasive he found the opinions, as required by the regulations. R. 23; *see* 20 C.F.R. § 404.1520c(b). Indeed, the ALJ specifically stated which portions of the opinions he found persuasive and then which portions he did not. *See* R. 23 ("The opinions of the State agency psychiatrist in March 2022 [Dr. Sims] . . . is . . . persuasive. However, the undersigned takes exception to . . . ."); R. 23 ("The opinions of the State agency psychologist in October 2023 [Dr. McIntyre] . . . are . . . persuasive. However, the undersigned takes exception to . . . ."); *see* 20 C.F.R. § 404.1520c(b).

17

The ALJ also articulated how consistent he found various parts of the opinions, as required by the regulations. *See* R. 23 ("The opinions of the State agency psychiatrist in March 2022 [Dr. Sims] . . . is consistent with the evidence of record overall . . . . The undersigned finds the longitudinal evidence is consistent with no limitation in this area of functioning."); R. 23 ("The opinions of the State agency psychologist in October 2023 [Dr. McIntyre] . . . are consistent with the longitudinal evidence . . . ."); *see* 20 C.F.R. § 404.1520c(b).

The ALJ applied the correct legal standards in evaluating Dr. Sims's opinion, and substantial evidence supports his finding that certain portions were not persuasive because "Dr. Sims did not have the opportunity to review and consider the substantial amount of new medical evidence for the next 1-2 years that includes routinely normal mental status exams and denial of symptoms by [Ms. Hefner]." *See* R. 23. In assessing supportability, the ALJ contrasted Dr. Sims's opinion regarding Ms. Hefner's "ability to respond appropriately to changes in the work setting and to set goals or make plans independently of others" with "new medical evidence for the next 1-2 years." R. 23. In assessing consistency, the ALJ referenced Ms. Hefner's "longitudinal evidence" including "routinely normal mental status exams" and Ms. Hefner's "denial of symptoms." R. 23.

The ALJ applied the correct legal standards in evaluating Dr. McIntyre's opinion, and substantial evidence supports his finding that certain portions were not

persuasive because "Dr. McIntyre indicates relying on [Ms. Hefner] being 'consistent in terms of symptoms reported', although he does not include specific symptoms he references." *See* R. 23. Thus, in assessing supportability, the ALJ stated that Dr. McIntyre's statements regarding Ms. Hefner's "ability to ask simple questions or request assistance, . . . to respond appropriately to changes in the work setting, and set goals or make plans independently of others" "are not grounded in the medical evidence." R. 23. In assessing consistency, the ALJ referenced Ms. Hefner's "routinely normal mental status," "the repeated denial of symptoms" by Ms. Hefner, evidence of record, and hearing testimony. R. 23. The ALJ specified that Ms. Hefner has denied "having any difficulties making decisions" and "she is assessed having good judgment." R. 23.

Beginning with his assessment of Ms. Hefner's severe impairments, the ALJ discussed Ms. Hefner's limitations to perform basic work activities. R. 14 ("The claimant's medically determinable mental impairments of a mild depressive disorder with anxious distress results in no limitation mentally . . . .) (internal citations omitted); R. 14 ("The neurology exams 2019 through at least January 2023 routinely include the claimant without any significant or chronic abnormality of mental status, neither from her depression, anxiety, or substance use.") (internal citations omitted); R. 14 ("The orthopedic records for February 2022 through January 2024 are inconsistent with mental status deficits when seen for exams and injections.")

19

(internal citations omitted). And the ALJ assessed "the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders . . . known as the 'paragraph B' criteria." R. 14. The ALJ found that Ms. Hefner had no limitation in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting and managing oneself. R. 14–15.

Before the ALJ made this finding with respect to the medical opinions, the ALJ thoroughly discussed Ms. Hefner's allegations and medical history, including her hearing testimony, diagnostic studies, exam results. R. 18–22. As it relates to her mental functioning, the ALJ acknowledged Ms. Hefner's testimony that "[s]ince she stopped work, her concentration and focus are worse." R. 19. The ALJ recounted that various physician visits indicated normal mental functioning. R. 20 (citing August 2021 exam by Neurology Consultants of Huntsville "includes normal mental functions" and subsequent visits show no change); R. 21 (citing March 2022 exam by SportsMed Orthopedic Surgery & Spine Center showing Ms. Hefner alert and cooperative); R. 22 (citing primary care records in which Ms. Hefner "report[ed] independence with caring for herself" and "den[ied] any difficulty . . . doing errands alone, . . . concentrating, remembering, or making decisions").

Under the new regulations, the ALJ adequately accounted for his finding regarding Dr. Sims's and Dr. McIntyre's medical opinions. The ALJ "state[d] with

20

at least some measure of clarity the grounds for his decision," *Dubose*, 2025 WL 2529598, at *5 (cleaned up), and "clearly articulated a consideration of both supportability and consistency," *Davis*, 2025 WL 1123853, at *5.

To the extent Ms. Hefner criticizes the ALJ's statement regarding her daily activities, the ALJ did not err: he cited Ms. Hefner's own denial of symptoms and both the record and hearing testimony that she "lives alone and is independent with daily activities and managing her household and finances." *See* R. 23.

The ALJ applied the correct legal standards in evaluating the medical opinions, and substantial evidence supports his finding that certain portions were not persuasive. Ms. Hefner has not shown that the ALJ erred in his consideration of the medical opinion evidence.

## B. The ALJ's Residual Functional Capacity Determination

Social Security Ruling 96-8p ("SSR 96-8p") regulates the ALJ's assessment of a claimant's residual functional capacity. Under SSR 96-8p, the residual functional capacity "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p at *1, 1996 WL 374184 (July 2, 1996). The ruling specifically mandates a narrative discussion of "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the

individual can perform based on the evidence available in the case record." *Id.* at *7. Additionally, in cases where symptoms are alleged, the assessment of a claimant's residual functional capacity must: "Contain a thorough discussion and analysis of the objective medical and other evidence . . . ; Include a resolution of any inconsistencies in the evidence as a whole; and Set forth a logical explanation of the effects of the symptoms . . . on the individual's ability to work." *Id.*

An individual claiming benefits must prove that she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The burden is on the claimant to introduce evidence in support of her application for benefits. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The Commissioner is not required to hire an expert medical source when determining whether a claimant is disabled. 20 C.F.R. §§ 404.1513a(b)(2), 404.1517; *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776 (11th Cir. 2010); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (recognizing that the ALJ is not "obligated to seek independent, additional expert medical testimony" when the record is sufficient to support the ALJ's decision). Instead, "the ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "The court should be guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Id.* at 1423.

Ms. Hefner argues that after rejecting certain portions of the medical opinions from the state agency psychiatric consultants, the ALJ's residual functional capacity determination "included no mental limitations" and "lacked support from any opinion evidence." Doc. 14 at 21. Further, Ms. Hefner argues that "[t]he ALJ is required to develop the record when there is insufficient evidence to craft the [residual functional capacity]." *Id.* Specifically, Ms. Hefner argues that "it was imperative that the ALJ obtain some useful opinion evidence to support his physical [residual functional capacity] determination" regarding her degenerative disc disease, osteoarthritis of the cervical and lumbar spine, and multiple sclerosis. *Id.* at 22.

The Commissioner argues that "the ALJ was not required to further develop the record." Doc. 15 at 16. Further, the Commissioner argues that "[t]he ALJ in [Ms. Hefner's] case properly performed his regulatory role in assessing [her residual functional capacity], and the ALJ was not required to base his [residual functional capacity] finding on a doctor's opinion." *Id.* at 18. Finally, the Commissioner argues that Ms. Hefner "failed to show that the record contains evidentiary gaps that resulted in unfairness or clear prejudice, and she failed to show that the ALJ needed additional information to make an informed decision." *Id.*

In making his residual functional capacity determination, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted

23

as consistent with the objective medical evidence and other evidence" and "the medical opinion(s) and prior administrative medical finding(s)." R. 18. The ALJ discussed Ms. Hefner's benefits hearing testimony. R. 18. Then, the ALJ detailed the "medical evidence," diagnostic studies (including MRIs, lumbar puncture, visual evoked potentials study, neurodiagnostic studies, and electromyography and nerve conduction testing), neurologist records, orthopedic records, and primary care records. R. 19–22. The ALJ stated:

> Considering all of the [medical evidence], including the conservative course of care documented (i.e., medications and injections; no ER/inpatient hospital care required for symptom control; specialist follow-ups as much as more than one year between follow-up), the reported independent lifestyle with living alone and managing her own household and daily activities, the denial of symptoms and/or lack of complaints when seen for care; the results of diagnostic imaging and studies (i.e., repeatedly no active demyelinating lesions of the brain, negative CSF analysis and VEP testing, stable findings of the spine,[] spinal canal stenosis that is without abnormal cord signal or visualized cord abnormality, no vertebral facture, spondylolisthesis), and the good objective findings on exams (i.e., no chronic or recurrent significant motor, sensory, reflex, range of motion, gait, or focal neurological deficits of the bilateral upper and bilateral lower extremities; no muscle disuse atrophy; normal and non-stressed gait and independent ambulation; normal muscle tone), the undersigned finds the claimant's symptoms are not of the frequency, duration, or severity alleged or to limit her greater than determined in the above [residual functional capacity] finding. In the above [residual functional capacity] finding, she is accommodated with a limitation to medium work, which precludes greater exertional demands of heavy and very

> heavy work, and there is a limitation to frequent posturals, which precludes those on a constant basis, as well as restrictions on climbing and work in certain environments, in part for safety precaution.

R. 22. The ALJ concluded:

> In sum, the above residual functional capacity assessment is supported by the record, when considered as a whole. The objective medical evidence, as detailed above, suggests greater sustained capacity than described by [Ms. Hefner]. Notwithstanding [Ms. Hefner's] allegations, treatment records and examinations do not provide evidence that would reasonably support a finding that [Ms. Hefner] is as limited as alleged. Ultimately, [Ms. Hefner] alleges a greater degree of debilitation than the medical evidence can support.

R. 24.

Regarding Ms. Hefner's mental residual functional capacity, the ALJ discussed the state agency psychological consultation at the initial level and upon reconsideration and the opinions of the consultative examiner. R. 23–24. The state agency psychiatrist and psychologist opinions are discussed *supra* IV.A. With respect to the consultative examiner, the ALJ stated that the opinions of Ms. Hefner "having moderate impairment of all areas of mental functioning and of her ability to maintain gainful full-time employment are opinions about severity while she does not give opinion about the resulting specific work capacities/limitations." R. 23 (citations omitted). The ALJ concluded:

> [T]he use of "moderate" implies more than minimal limitations and such severity is not consistent with the

> medical evidence of record that includes routinely normal mental status objectively when seen for care and the repeated denial of symptoms by the claimant. The evidence of record and recent hearing testimony includes the claimant lives alone and is independent with daily activities and managing her household and finances. Also of note, the medical evidence includes the claimant denying having any difficulties making decisions and she is assessed having good judgment.

R. 23–24.

The ALJ properly identified Ms. Hefner's functional limitations and assessed "her work-related abilities on a function-by-function basis." SSR 96-8p at *1. In accordance with the ruling, the ALJ's residual functional capacity finding "contain[ed] a thorough discussion and analysis of the objective medical and other evidence," "[i]nclude[d] a resolution of any inconsistencies in the evidence as a whole," and "[s]et forth a logical explanation of the effects of the symptoms" on Ms. Hefner's "ability to work." *Id.* at *7.

The conditions in the residual functional capacity were well-explained and well-supported by medical evidence. Additionally, these findings reflect that the ALJ carefully considered the evidence of Ms. Hefner's alleged mental impairments in determining her residual functional capacity. The record here was neither incomplete nor inadequate. Instead, the record was sufficient for the ALJ to evaluate Ms. Hefner's impairments and craft a residual functional capacity that incorporated

her abilities. The court discerns no error in the ALJ's residual functional capacity analysis.

## V.    Conclusion

The ALJ's determination that Ms. Hefner is not disabled is supported by substantial evidence. The Commissioner's final decision is therefore affirmed. A separate order will be entered.

**DONE** and **ORDERED** this 20th day of January, 2026.

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE

27